**Elaine S. BRUNGS et vir., Appellant,**

v.

**CONSOLIDATED PLAN SERVICE, INC., Appellee.**

**No. 15411.**

Court of Civil Appeals of Texas, San Antonio.

Sept. 17, 1975.

Rehearing Denied Oct. 15, 1975.

Tuck R. Chapin, San Antonio, for appellant.

Alfred W. Offer, San Antonio, for appellee.

KLINGEMAN, Justice.

Plaintiff, Elaine S. Brungs, appeals from a take-nothing judgment entered against

her in her suit against defendant, Consolidated Plan Service, Inc., for damages sustained by her in a truck-car collision. Trial was to a jury. The jury found that: (a) plaintiff failed to keep a proper lookout and such failure was a proximate cause of the occurrence in question; (b) plaintiff failed to make proper application of the brakes and such failure was a proximate cause of the occurrence in question; (c) plaintiff overtook and attempted to pass the vehicle driven by defendant's driver, such action was negligence, and such negligence was the proximate cause of the occurrence in question. The jury absolved defendant of any negligence, finding that: (a) defendant's driver did not fail to keep a proper lookout; (b) defendant's driver was not driving at an excessive rate of speed; (c) defendant's driver did not fail to make a proper application of brakes; (d) defendant's driver was not attempting to turn his vehicle to the left; (e) defendant's driver moved his vehicle from the outside lane to the inside lane, but that such movement was not negligence and was not a proximate cause of the occurrence in question; (f) defendant's driver did not fail to yield the right of way to the vehicle driven by plaintiff. Seven damage issues were submitted with the jury finding that plaintiff incurred past medical expenses of $605.45, but the jury answered all other damage issues adversely to plaintiff. Plaintiff did not file a motion for instructed verdict or for judgment non obstante veredicto.

Plaintiff's point of error No. 2 complains that the jury's answers to Special Issues Nos. 1, 5, 7, 10a, 11, 12, 12a and 13 (negligence of defendant) are supported by no evidence. Plaintiff's point of error No. 3 complains that the jury's answers to Special Issues Nos. 1, 3, 5, 7, 10a, 11, 12, 12a and 13 are against the great weight and preponderance of the evidence. Her fourth point of error asserts that Special Issues Nos. 14, 15, 18, 20, 21 and 22 (negligence of plaintiff) are supported by no evidence. Her fifth point of error asserts that the jury's answers to Special Issues Nos. 14, 15, 18, 19, 20, 21 and 22 are against the great weight and preponderance of the evidence. Two points of error assert that the jury's answers to Special Issues Nos. 23, 24, 25, 26, 27, 28 and 29 (damages) are supported by no evidence and against the great weight and preponderance of the evidence.

Defendant asserts that such points of error are multifarious and are too broad and general to be considered by this Court. It further asserts that such points of error have not been properly preserved for appellate review.

 Clearly such points of error are very general and overly broad, are multifarious, and do not strictly comply with the rules of civil procedure. However, appellate courts, including this Court, have given a liberal interpretation of the rules in favor of the sufficiency of an appellant's brief and frequently consider general and multifarious points of error where, from the statements and arguments under the point, the nature of appellant's complaint can be determined.

 A more serious question is presented as to whether such points of error are preserved for review by proper assignments in appellant's amended motion for new trial. Such points of error are predicated upon the following assignments of error in such motion for new trial: (2) that the evidence introduced in the trial court proved as a matter of law that the defendant was guilty of negligence on the occasion in question which proximately caused the injuries and damages sued for by Elaine S. Brungs, and that the jury's answers to Special Issues Nos. 1, 3, 5, 7, 10a, 11, 12, 12a and 13 (negligence of defendant) are against the great weight and preponderance of the evidence and, in effect, are supported by no evidence; (3) the jury's answers to Special Issues Nos. 14, 15, 18, 19, 20, 21 and 22 (negligence of plaintiff) are against the great weight and preponderance of the evidence and are supported by no evidence; (4) the jury's answers to Special Issues Nos. 23, 24, 25, 26, 27, 28 and 29 (damages) are

against the great weight and preponderance of the evidence and the negative findings are supported by no evidence; and that the jury's verdict as a whole was against the great weight and preponderance of the evidence.

It is seen that the assignments of error in the motion for new trial are even more broad and general than the points of error in the brief and are clearly multifarious. We have previously pointed out that our appellate courts have shown an inclination to consider broad and multifarious points of error asserted in an appellant's brief where, from the statements and arguments in the brief, the gist of appellant's complaint can be determined. However, no such liberality has been extended in determining the sufficiency of an assignment of error in a motion for new trial. *Smith v. Brock,* 514 S.W.2d 140 (Tex.Civ.App.—Texarkana 1974, no writ); *Texas Indemnity Insurance Company v. Warner,* 159 S.W.2d 173 (Tex.Civ. App.—Texarkana 1972, writ ref'd w. o. m.). There must be substantial compliance with the provisions of the rules pertaining to assignments of error in motions for new trial if a litigant is to have his point of error based thereon considered by an appellate court. Rules 320, 321, 322 and 374, Tex.R.Civ.P. (1967); *Wagner v. Foster,* 161 Tex. 333, 341 S.W.2d 887 (1960); *Tex-Wash Enterprises, Inc. v. Robna, Inc.,* 488 S.W.2d 504 (Tex.Civ.App.—Waco 1972, writ ref'd n. r. e.).

An examination of plaintiff's amended motion for new trial shows that plaintiff is attempting to complain of the entire charge containing 29 Special Issues by three assignments of error wherein she complains of both legal and factual insufficiency of various separate and distinct acts of negligence of both plaintiff and defendant, and of seven separate and distinct damage issues. Plaintiff seeks in each of these assignments of errors to complain in one point in a general way about several distinct and separate matters. For example, assignment of error No. 2 complains of nine separate factual findings by the jury; assign-

ment No. 3 complains of seven separate factual findings by the jury; and assignment No. 4 complains of seven separate factual findings by the jury. All of such assignments of error embrace more than one ground of error, are multifarious in nature, are too general and overly broad, and in effect constitute a general assignment.

For the reasons hereinabove set forth, plaintiff's points of error Nos. 2, 3, 4, 5, 6, and 7 are not properly preserved for appellate review by her amended motion for new trial and cannot be considered on this appeal. *Niemann v. State,* 471 S.W.2d 124 (Tex.Civ.App.—San Antonio 1971), *rev'd on other grounds,* 479 S.W.2d 907 (Tex.1972); *Collins v. Smith,* 142 Tex. 36, 175 S.W.2d 407 (1943); *Wagner v. Foster, supra; Smith v. Brock,' supra; Kettle v. Smircich,* 415 S.W.2d 935 (Tex.Civ.App.—Corpus Christi 1967, no writ); *Bauguss v. Bauguss,* 186 S.W.2d 384 (Tex.Civ.App.—Dallas 1945, writ ref'd w. o. m.); Rules 320, 321, 322 and 374, Tex.R.Civ.P. (1967).

By her only other point of error, plaintiff contends that the judgment should be reversed because of jury misconduct. The gist of her complaint here is that an agent or representative of defendant made friends with and conversed with members of the jury, and that the bailiff of the court had an extended conversation with at least one juror.

The pertinent information pertaining to such alleged jury misconduct may be summarized as follows: (1) an affidavit by plaintiff attached to her first amended motion for new trial, in which she states that on the last day of the trial, Richard Villasana, an officer or agent of defendant, during a break in the court proceedings, had a conversation with at least two jurors, whom she did not know, but in which conversation she overheard Mr. Villasana state in effect "that it was a shame people brought law suits such as this as it tended to run insurance rates up so high that it would break their small company"; (2) an affidavit by

Tuck Chapin, Esq., stating that immediately after the verdict of the jury was returned, plaintiff told him that she heard two jurors talking to Mr. Villasana and related the conversation as set forth in her affidavit; (3) testimony by plaintiff (a) that on several occasions she saw Mr. Villasana talking to different jurors; that it bothered her because she could not understand why Mr. Villasana was allowed to talk to the jury when she was not; that she could not remember whether such conversation occurred on the last day of the trial or the day before; (b) that on one occasion when she had come back from lunch, Mr. Villasana and a man were carrying on a lengthy conversation and she overheard them talking to the effect that the small companies would go broke if they had to have such cases as this come into court and insurance rates would go up; that as soon as they saw her they ·separated; (c) that she saw Mr. Villasana talking to more than one juror, and on one occasion saw him talking to an elderly black juror but that she did not overhear what was said; (4) the statement by Mr. Villasana set forth in her affidavit; (5) Mr. Lawrence E. Maha testified that he was a juror in the case. Mr. Maha was asked whether he had ever talked to Mr. Villasana during the process of the trial, and he stated that he had "bid him the time of day . . . Like hello or something like that." He further said that the bailiff was present at such time and that the talk was "just common talk." He stated that he did not recall any comment by anyone to the effect that it was a shame that people brought suits like this and that it would raise insurance rates; (6) Mr. Manuel Garza, another juror in the case, testified that he knew Mr. Villasana when he saw him, but that he did not talk to him at any time during the course of the trial; (7) Mr. Ernest F. Stevenson, another juror in the case, said he did not talk to Mr. Villasana during the course of the trial.

All of the above set forth witnesses testified on the motion for new trial and were put on the stand by plaintiff.

■ Under Rule 327, Tex.R.Civ.P. (1967), the plaintiff, in order to obtain a new trial upon the grounds of jury misconduct, was required to show that (a) the misconduct complained of in fact occurred; (b) it was material; (c) it was calculated to and probably did result in harm. *Fountain v. Ferguson,* 441 S.W.2d 506 (Tex.1969), *cert. denied,* 396 U.S. 959, 90 S.Ct. 433, 24 L.Ed.2d 424; *Crawford v. Detering Company,* 150 Tex. 140, 237 S.W.2d 615 (1951); *Barrington v. Duncan,* 140 Tex. 510, 169 S.W.2d 462 (1943).

It was incumbent upon plaintiff initially to prove that misconduct occurred. As hereinbefore related, the only testimony in support of such alleged misconduct was by plaintiff herself who testified in effect that on several occasions she saw Mr. Villasana talking to members of the jury and that on one occasion she heard Mr. Villasana tell one juror "that it was a shame people brought law suits such as this as it tended to run insurance rates up so high that it would break their small company." Mr. Villasana categorically denied any such conversation occurred, and there is no corroboration of such testimony by any juror or anyone else. Only three jurors testified, two of whom had never had any conversation with Mr. Villasana; one juror testified that on one occasion when he was talking to the court bailiff, Mr. Hitzfelder, Mr. Villasana was present part of the time, but that he did not recall the statement above referred to, and that he did not think there was any conversation about insurance rates. Mr. Hitzfelder testified that no such conversation occurred.

■ In her motion for new trial, plaintiff asserted that a new trial should be granted because of jury misconduct. Where the trial court, in ruling on a motion for new trial, does not file express findings, it will be presumed on appeal that the court found all controverted facts in support of the judgment overruling the motion for new trial, and that no misconduct occurred. *Brawley v. Bowen,* 387 S.W.2d 383 (Tex.

1965); *Harlow v. Swift and Company,* 491 S.W.2d 472 (Tex.Civ.App.—Eastland 1972, writ ref'd n. r. e.); *Coca Cola Bottling Company v. Mitchell,* 423 S.W.2d 413 (Tex.Civ. App.—Corpus Christi 1967, no writ); *Sims v. McKnight,* 420 S.W.2d 173 (Tex.Civ.App. —Houston [14th Dist.] 1967, writ ref'd n. r. e.); *Anderson v. Hooker,* 420 S.W.2d 235 (Tex.Civ.App.—El Paso 1967, writ ref'd n. r. e.).

The actual occurrence of jury misconduct is a question of fact for the trial court's determination, and, if the evidence is conflicting as to whether such misconduct occurred, the decision of the trial court is binding on the appellate court. *Brawley v. Bowen, supra; Perryman v. Sims,* 506 S.W.2d 753 (Tex.Civ.App.—Tyler 1974, writ ref'd n. r. e.); *Harwell & Harwell, Inc. v. Rodriguez,* 487 S.W.2d 388, 399 (Tex.Civ. App.—San Antonio 1972, writ ref'd n. r. e.); *Harlow v. Swift and Company, supra.*

Plaintiff did not meet the burden of proof required of her to prove jury misconduct. The trial court did not err in overruling plaintiff's motion for new trial because of jury misconduct.

We find no reversible error. The judgment of the trial court is affirmed.