**Fred NIEMANN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14931.**

Court of Civil Appeals of Texas, San Antonio.

Sept. 1, 1971.

Rehearing Denied Sept. 28, 1971.

Price, Fisher, Hill & Patton, Jack N. Price, Longview, Larry Niemann, Austin, for appellant.

Crawford C. Martin, Atty. Gen., Nola White, Alfred Walker, Watson C. Arnold, Asst. Attys. Gen., Austin, David M. Cox, Houston, for appellee.

CADENA, Justice.

This is a condemnation case in which the State of Texas acquired fee simple title to a tract of land, consisting of 4.370 acres (Parcel 46A), and a drainage easement in 0.114 acres of land (Parcel 46B) belonging to the appellant, Fred Niemann, who appeals from a judgment, based on a jury verdict, awarding him $9,500.00 for the taking of the fee to Parcel 46A, and $5.70 for the taking of the easement. The takings were for the purpose of the construction of Interstate Highway No. 35, also referred to in the testimony as Loop 410, in San Antonio.

The case in which the judgment before us was entered bore the number 1245 in the trial court. The State had also filed four other condemnation suits against appellant involving other tracts of land owned by him. One case, bearing the number 1249 below, involved the taking of a fee title in 5.482 acres of land (Parcel 50A) and two channel easements (designated as Parcels 50B and 50C). From the evidence in this case, and from the remarks of counsel for both parties during numerous legal wrangles and offers of proof which took place outside the presence of the jury, it appears that causes 1245 and 1249 at one time were consolidated, and that a prior trial of the consolidated cases actually began but ended in a mistrial. Appellant filed numerous instruments in what he designated in such instruments as cases 1245 and 1249, and the State filed at least one pleading so designated, although no order of consolidation appears in the transcript. Appellant filed a motion for severance of the two suits, but, although there is nothing in the transcript to indicate that such motion was ever called to the court's attention, counsel for the State in the case before us refers to the severance of the two cases. Although all of appellant's pleadings bear both numbers, all of the evidence in this case concerns only the parcels involved in No. 1245 (Parcels 46A and 46B); the charge to the jury is captioned No. 1245; the issues submitted to the jury involved only the land which is the subject matter of No. 1245; the judgment is captioned No. 1245; and the judgment disposes only of the land involved in 1245.

Appellant filed a motion seeking to invoke the doctrine applied by our Supreme Court in State v. Meyer, 403 S.W.2d 366 (1966), and followed by this Court in Bel-Aire Housing Corp. v. State, 405 S.W.

2d 225 (1966, writ ref'd n. r. e.). Although this motion purports to be applicable to both No. 1245 and No. 1249, it clearly states that appellant waives all damages to his remaining land, including the channel easement (46B), and that the only issue in 1245 concerns the market value of the 4.370 acres being taken in fee (Parcel 46A). The motion seeks to have the court instruct counsel for the State that, since the only issue concerns the market value of the land being taken in fee, no reference should be made in the voir dire examination of the prospective jurors, in questions to witnesses, or in jury argument, that appellant owns any land contiguous and adjacent to the land being taken. The motion prayed that the State be restricted from referring to the remainder of appellant's land or to the easements, and from attempting to show, directly or indirectly, that merely part of appellant's land was being taken.

There is nothing in the transcript to indicate that the trial court entered any order relating to this motion, but the statement of facts makes it clear that the trial judge was of the opinion that, under the *Meyer* doctrine, all reference to a remainder was to be avoided. No issues were submitted to the jury relating to severance damages.

Appellant here presents 22 points of error. Points 1, 2, 3, 4, 5 and 6 assert that the State, in violation of the *Meyer* rule, was permitted to make known to the jury that the land being taken in fee was but part of a larger tract owned by appellant.

Testimony given outside the presence of the jury shows that appellant owned all of the land from Eisenhauer Road on the south to Walzem Road on the north, fronting on the east side of what was then Loop 13 in San Antonio. The 4.370 acres (Parcel 46A) being condemned in fee in this case consisted of a strip of land extending in a more or less northerly direction for a distance of about 1,500 feet along the east line of Loop 13 from a point beginning about 200 feet north of the intersection of Eisenhauer Road and Loop 13. Parcel 46A consisted of a strip off the western portion of

three tracts which appellant had purchased in 1950, 1951 and 1954. The date of the taking was June 15, 1960. The remainder of the land owned by appellant on Loop 13 from Eisenhauer to Walzem Road, a distance of more than 5,000 feet, was purchased by appellant in 1950, 1951, 1953 and 1959.

The trial court, after hearing this testimony, ruled that the State would not be permitted to question appellant concerning his purchases of any of this land, except for the purchase of a ten-acre tract on the southeast corner of Loop 13 and Walzem Road. (The western edge of this latter tract was the subject matter of condemnation case No. 1249, and is described in the State's pleadings in that case as Parcel 50A.)

Over appellant's objections, the State was permitted to elicit from appellant the fact that he owned considerable amounts of land in the near vicinity of the land being taken. The only parcels of such other land owned by appellant which were located with reference to Parcel 46A were a tract which appellant purchased from one Ehlert in 1953, consisting of more than 33 acres and situated about 850 feet north of Parcel 46A, and Parcel 50A, which is about one-half mile from Parcel 46A.

This evidence might present a serious question of violation of the *Meyer* rule. However, previous to the time that such testimony was given, appellant's witness, Bender, testified without objection, on cross-examination, that if "the frontage road in front of Mr. Niemann's property were now a two-way frontage road instead of a one-way road his property would be more valuable." At the time of trial, I. H. 35 had been built over the land condemned in this case. Similar testimony concerning the presence of a remainder was admitted, prior to the testimony complained of, when appellant's value witness testified, on cross-examination, that he had not appraised Parcel 46B (the channel easement). Parcel 46B is directly behind Parcel 46A, and this

testimony, admitted without objection, clearly shows that appellant owned land in back of the strip being condemned in fee.

At the outset of the trial, appellant filed a motion seeking severance of that part of the suit which involved condemnation in fee of Parcel 46A from the portion involving the taking of the channel easement, Parcel 46B. This motion to sever was expressly conditioned on the granting of appellant's motion to suppress all evidence tending to show the existence of a remainder with reference to the taking of Parcel 46A. Unless the two takings were separately tried, testimony concerning the taking of the channel easement would necessarily show the presence of a remainder to Parcel 46A. However, there is nothing in the record to show that this motion was ever called to the attention of the trial court. In any event, as pointed out above, prior to the time that the State's value witness testified concerning damages resulting from the taking of the easement, evidence showing the existence of the remainder had been admitted without objection.

Appellant's first six points are without merit.

Appellant's seventh and eighth points complain of the admission of the testimony of the State's value witness, Gaston, because the witness had not seen the property on or about the date of taking; was not familiar with the property at the time of taking; had never been on the property prior to the time it was taken; had never appraised in the area of the land here taken; and was not employed to appraise the property until nine years after the taking and after the highway had been constructed over the land.

■ The witness testified that he had driven by the property many times; that he knew what the property looked like on or about the date of taking; that he was familiar with the area in which the property

was situated; that he was familiar with land uses and sales in the area; and that, from his experience for many years as a real estate broker and appraiser he was familiar with land values in Bexar County and had made appraisals "all over that area of town." In view of this testimony, the trial court did not abuse its discretion in holding that the circumstances under which the appraisal was made affected the weight, rather than the admissibility, of his testimony. Hodges v. State, 403 S.W.2d 207 (Tex.Civ.App.—Texarkana 1966, writ ref'd n. r. e.); State v. Sides, 348 S.W.2d 446 (Tex.Civ.App.—Dallas 1961, writ ref'd n. r. e.). Contentions similar to those here advanced by appellant were rejected in Hubbard v. Harris County Flood Control District, 286 S.W.2d 285, 287–288 (Tex.Civ. App.—Galveston 1956, writ ref'd n. r. e.).

■ The testimony of Gaston is further challenged on the ground that his opinion evidence was based upon "improper considerations, i. e., (1) the 'supply of and demand' for the property in question, * * * and (2) sales shown to have no comparability." Again, appellant strikes only at the weight to be given the testimony of the witness. Rayburn, Texas Law of Condemnation Sec. 127, p. 403 (1960). The weaknesses, if any, of Gaston's supporting reasons and theories, "including comparable sales, goes to the weight of his testimony, not to its admissibility." State v. Sides, supra, 348 S.W.2d at 452.

■ Appellant's ninth and tenth points are "no evidence" and "insufficient evidence" attacks on the verdict of the jury. Appellant's amended motion for new trial contains only two assignments which question the sufficiency of the evidence to support the verdict. Assignment 6 asserts that there is no evidence "to support the findings of the jury regarding value of the land taken or the easement in question." Assignment 7 contends that there is insufficient evidence to support such findings.[1]

1. In his brief appellant states that his ninth and tenth points are also germane to assignments 5, 27, 28 and 30 of the amended motion for new trial. These

Each of these two assignments is directed at the jury's answers to three separate issues, and these assignments amount to no more than a general complaint that the verdict of the jury is contrary to the evidence. Assignments 6 and 7 are too general to preserve anything for review; and, therefore, appellant's ninth and tenth points will not be considered. Rule 322, Texas Rules of Civil Procedure; McWilliams v. Muse, 157 Tex. 109, 300 S.W.2d 643 (1957); Murphy v. Maroney, 456 S.W.2d 787 (Tex.Civ. App.—Waco 1970, writ ref'd n. r. e.); Louisiana & Arkansas Ry. Co. v. Robinson, 302 S.W.2d 665 [Tex.Civ.App.—Texarkana 1957, writ ref'd n. r. e., cert. den., 355 U.S. 959, 78 S.Ct. 537, 2 L.Ed.2d 534 (1958)]; Arana v. Gallegos, 284 S.W.2d 958 (Tex. Civ.App.—San Antonio 1955, no writ).

Point 11 embodies the complaint that the trial court erred in "refusing to allow the land owners to place Nelson Cory on the witness stand to show that he had appraised the property in question for the State of Texas on the date of taking at a much higher value than testified to by the [State's only value] witness Gaston," and in refusing to allow appellant to show "that other appraisers besides Gaston, which the State failed to call as witnesses, had appraised the property and examined it as of the date of taking."

■ The opinions of our Supreme Court in State v. Biggers, 360 S.W.2d 516 (1962), and Boyles v. Houston Lighting and Power Company, 464 S.W.2d 359 (1971), make it clear that evidence that a condemnor has failed to call valuation witnesses whom it employed to appraise the property being taken is of no relevancy to any issue in a condemnation case. The tender of such evidence "could only be for the purpose * * * of creating the impression with the jury that the State was suppressing evidence. It would not be admissible for * * [this] purpose." State v. Biggers, supra, 360 S.W.2d at 517.

■ As appellant points out, under *Biggers*, he was entitled to interrogate Cory with respect to his opinion as to value.[2] However, as is made clear by the language of appellant's eleventh point, the basic complaint here concerns the exclusion of testimony showing the witness had been employed by the State. The remarks which appellant's counsel addressed to the trial court in support of the admissibility of Cory's testimony establish that appellant's purpose in calling Cory was to show that the State had acted improperly in not calling Cory, rather than to merely present relevant opinion of another expert as to value. Under these circumstances, the ruling of the trial court is supported by the language of the *Biggers* and *Boyles* opinions. "And a decision not to call as a witness one employed to investigate and evaluate facts and report an expert opinion is not a suppression of evidence." 360 S.W.2d at 518. The evidence was inadmissible for the purpose for which it was offered by appellant.

Appellant, by his twelfth point, brands as error the action of the trial court in permitting State's counsel to make broken and repeated voir dire examination of witness which actually amounted to cross-examination of the witnesses, and in allowing State's counsel to make argumentative sidebar remarks and ask argumentative questions.

An examination of the record discloses that the trial court was extremely lenient in permitting both sides to interrupt the direct testimony of witnesses for the purpose of conducting "voir dire" examinations. However, neither in his motion for new trial nor in his brief here does appellant

four assignments complain of the action of the court in overruling appellant's objections to certain testimony of the State's value witness, and they in no way question the sufficiency of the evidence to support the verdict.

2. We do not here pass on the question of whether the right of the condemnee to call an appraiser who was employed, but not called, by the condemnor is conditioned on the tender of a reasonable fee to such appraiser by the condemnee.

call attention to any voir dire examination by the State which could conceivably be held to be prejudicial error.

■ Only two incidents involving side-bar remarks or argumentative questions were specifically called to the attention of the trial court in appellant's amended motion for new trial. One of these incidents occurred during the State's cross-examination of appellant's value witness, Reinhardt, when State's counsel commented, "Mr. Reinhardt, you have talked about five minutes and still haven't answered my question." When appellant's attorney objected to "counsel's comment," the trial court admonished the State's attorney to refrain from commenting. The other occasion set out in the motion for new trial refers to the action of the State's attorney in asking Reinhardt if it was not his practice to place the value of property as high as possible in the hope that the jury would split the difference between the landowner's value testimony and that of the condemnor. After appellant's objection to the question was overruled, the witness answered that he did not "appraise property to split the difference." Assuming that these two instances constitute, as appellant urges, improper conduct, we cannot agree with appellant's contention that they can be branded as conduct so prejudicial and inflammatory as to be reasonably calculated to produce an improper verdict. Error can support a reversal only if it amounts "to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment, * * *." Rule 434, T.R.C.P.

Point 13 contends that it was error to permit the State to cross-examine appellant's value witness, Booton, on irrelevant and immaterial matters. Appellant's brief states that this point of error is based on the nineteenth, twentieth and thirty-first grounds of his motion for new trial. The thirty-first assignment of error complains of the trial court's ruling in connection with appellant's attempt to cross-examine the State's appraiser, Gaston. The twentieth assignment complains of the fact that the State was permitted to ask Booton whether certain sales of other properties did not reflect enhancement in value resulting from the construction of the new expressway and, therefore, should not be considered. This complaint is not brought forward in appellant's brief.

■ The nineteenth assignment presents as error the action of the trial court in allowing the witness, R. C. Booton to be questioned concerning "other appraisals not shown to have any relevance or connection with any legitimate issue in the condemnation proceeding, and not having been shown to have necessary elements of comparability." This statement is too general in that it does not call the court's attention to any specific ruling with reference to any specific sale. Appellant's point purportedly based on this insufficient assignment in the motion for new trial will not be considered.

■ Nor did the trial court err in refusing to allow appellant to question the witness, Gaston, concerning the cost of development of residential lots on the 4.370 acres being taken in fee. It has been consistently held that where raw acreage is being condemned it is not proper to admit in evidence hypothetical plats of non-existent subdivisions, since such evidence would tend to cause the jury to value the land as lots. "Opinion testimony as to the value must be based upon the value of the land as an entirety and not in parcels, * * *" Lower Nueces River Water Supply Dist. v. Collins, 357 S.W.2d 449, 452 (Tex.Civ. App.—San Antonio 1962, writ ref'd n. r. e.). The specific question which elicited the ruling of which complaint is made was: "Have you made an analysis to see how many lots you would get out of that property and what they would be worth—what it would cost to make them into lots?" The question clearly calls for speculation concerning the best method of dividing the

land into separate building lots, the manner in which such lots could best be sold, and the price for which such lots might be sold. This type of conjecture was condemned in *Collins*.

 The last point complains of the trial court's refusal to permit appellant's witness, Van Horn, to testify concerning the purchase of a piece of property in the area by a bank and that property values in the area had appreciated. The point asserts that such testimony was proper rebuttal to evidence which the trial court allowed the State to introduce.

At the outset, it should be noted that Van Horn was permitted to testify that property values in the area had doubled since the date of the taking. Mr. Van Horn's testimony shows that the bank had not purchased the land in question, but was merely leasing under an instrument which gave to the bank an option to purchase the land. An option to purchase cannot be classified as a comparable sale.

The judgment of the trial court is affirmed.